**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. JOHN KRUEGER, individually and as Co-Administrator of the Estate of Jeffery Krueger, and<br>2. PAMELA KRUEGER, individually and as Co-Administrator of the Estate of Jeffery Krueger,<br>　　　*Plaintiffs*,<br><br>v.<br><br>1. SHERIFF CHRIS ELLIOT, in his official capacity as Sheriff of Wagoner County,<br>2. WAGONER EMERGENCY SERVICES, INC., a/k/a WAGONER EMS,<br>3. KALEB PHILLIPS, individually,<br>4. NICHOLAS ORR, individually,<br>5. JEFF PATTERSON, individually,<br>6. ALAN SMITH, individually,<br>7. DREW CRAIG, individually,<br>8. TYLER McFARLAND, individually,<br>9. CLARENCE COLLINS, individually,<br>10. COREY NEVITT, individually,<br>11. TRAVIS POTTS, individually,<br>12. BEN BLAIR, individually,<br>13. MATTHEW LOTT, individually, and<br>14. ELIZABETH CROCKETT, individually.<br>　　　*Defendants*. | Case No. CIV-21-044-RAW |

**<u>ORDER</u>**[1]

This action arises from the death of Jeffrey Krueger on July 1, 2019.  Plaintiffs allege that

he was beaten, tased, cuffed, and ultimately suffered positional asphyxiation resulting in his

death.  Plaintiffs bring this action against:

- the Sheriff of Wagoner County, Chris Elliott, in his official capacity (hereinafter "Sheriff Elliott");

---

[1] When the court cites to the record, it uses the pagination and attachment numbers assigned by CM/ECF.

- Wagoner County Lieutenant Elizabeth Crockett, Deputy Sheriff Kaleb Phillips, Deputy Sheriff Nicholas Orr, and Deputy Sheriff Matthew Lott, each in their individual capacities (hereinafter collectively referred to as "County Defendants");[2]
- City of Wagoner Police Officers Ben Blair, Clarence Collins, Drew Craig, Tyler McFarland, Corey Nevitt, and Travis Potts, each in their individual capacities (hereinafter collectively referred to as "City Defendants"); and
- Emergency Medical Technicians Jeff Patterson and Alan Smith,[3] each in their individual capacities (hereinafter collectively referred to as "EMT Defendants").[4]

Plaintiffs bring the following claims pursuant to 42 U.S.C. § 1983:

1. illegal arrest in violation of the Fourth Amendment against Sheriff Elliot, the County Defendants, and the City Defendants;
2. excessive force in violation of the Fourth Amendment against all Defendants;
3. inadequate training and supervision in violation of the Fourth Amendment against Sheriff Elliott;

Plaintiffs bring the following state law claims:

4. medical negligence and wrongful death against Wagoner EMS and the EMT Defendants;
5. negligence and wrongful death under the Oklahoma Governmental Tort Claims Act (hereinafter "GTCA") against Sheriff Elliott; and
6. assault and battery against all Defendants.

Now before the court is the motion for summary judgment filed by the EMT Defendants [Docket No. 295], Plaintiffs' response thereto [Docket No. 330], and the EMT Defendants' reply [Docket No. 346]. With leave of court, Plaintiffs also filed a "base brief of general law for responses in opposition" to all of the seven pending motions for summary judgment [Docket No. 321]. The EMT Defendants' exhibits are filed at Docket Nos. 295-1 through 295-18 and 348-1 through 348-2. Plaintiffs' exhibits are filed at Docket Nos. 327-1 through 327-30 and 329-1.

---

[2] Plaintiffs also sued Major Dustin Dorr and Deputy Sheriff Colby North, but they have since been dismissed with prejudice by joint stipulation. Docket No. 316.

[3] Both Smith and Patterson are emergency medical technicians. Smith has additional training as a paramedic. Docket No. 295, at 11; Docket No. 295-7, at 13-14.

[4] Plaintiffs also sued Wagoner Emergency Services, Inc., a/k/a Wagoner EMS. As Wagoner EMS failed to plead or otherwise defend as directed, a Clerk's Entry of Default has been entered. Docket No. 64.

Docket No. 330, at 5.  Each party submitted the 17:56 minute video footage from Deputy Phillips' Body Cam (hereinafter referred to as "Phillips Body Cam"),[5] as well as the 5:39 minute video footage from another body cam (hereinafter referred to as "AXON Body Cam").[6] Additionally, Plaintiffs submitted a 7:25 minute QT Video.  The court will address the other pending motions for summary judgment in separate orders.[7]

As stated above, Plaintiffs assert three claims against the EMT Defendants, including their 42 U.S.C. § 1983 claim for excessive force in violation of Mr. Krueger's Fourth Amendment rights and their state law claims for medical negligence and wrongful death and for assault and battery.  The EMT Defendants argue that they are entitled to qualified immunity with regard to the § 1983 claim, that the medical negligence claim is not cognizable, and that the assault and battery claim is without merit.

I.      **Standard of Review**

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

---

[5] As the Phillips Body Cam video includes a timestamp, the court references it by the timestamp.
[6] The AXON Body Cam video is referenced differently by the parties, including being connected with multiple officers.  It is most commonly referenced as being connected with Bob Haley and labeled an "AXON Video."
[7] Also pending are motions by Sheriff Elliott [Docket No. 301]; by the County Defendants – Lieutenant Crockett [Docket No. 302], Deputy Phillips [Docket No. 306], Deputy Orr [Docket No. 307], and Deputy Lott [Docket No. 308]; and by the City Defendants [Docket No. 297].

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.'" *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1257-58 (10th Cir. 2006) (citation omitted).  Conversely, if "the record does not unequivocally point in one direction and allows for a genuine dispute concerning the facts, '[a]ll disputed facts must be resolved in favor of the party resisting summary judgment.'" *Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021).

In applying the summary judgment standard, the court views the evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* at 1258 (citation omitted).  At this stage, however, a plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of the allegations.  *Id.* "Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).  Additionally, "the general proposition that we accept plaintiff's version of the facts in the qualified-immunity summary-judgment setting 'is not true to the extent that there is *clear contrary* video evidence of the incident at issue.'" *Estate of Taylor*, 16 F.4th at 757 (citing *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) and adding emphasis).

While at the summary judgment stage evidence need not be submitted "in a form that would be admissible at trial," "the content or substance of the evidence must be admissible." *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) and *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995)).  For example, the court disregards "inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form." *Argo v.*

4

*Id.* (emphasis in original). Furthermore, "affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). "Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

### ***Qualified Immunity***

The affirmative defense of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant raises a qualified immunity defense in response to a motion to dismiss or a motion for summary judgment,[8] the burden shifts to the plaintiff and the court employs a two-part test. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012). A plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (citing *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)). "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Id.* (citation omitted). The court has discretion to decide which of the two prongs to address first in light of the circumstances of the case. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

---

[8] "The legally relevant factors for a qualified immunity decision will be different at the summary judgment stage – no longer can the plaintiffs rest on facts as alleged in the pleadings." *Stonecipher v. Valles*, 759 F.3d 1134, 1148, n.9 (10th Cir. 2014).

In a case with multiple defendants, a defendant's entitlement to qualified immunity turns "on an *individual assessment* of each defendant's conduct and culpability." *Pahls v. Thomas*, 718 F.3d 1210, 1233 (10th Cir. 2013) (emphasis added). "Plaintiffs must do more than show that their rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations." *Id*. at 1228 (citations omitted). Plaintiffs "must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility, that violated their clearly established rights." *Id*.

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf*, 774 F.3d at 944 (citation omitted). A law is not clearly established unless existing precedent has "placed the statutory or constitutional question beyond debate." *Id.* (citation omitted). This is an objective test. *Brown*, 662 F.3d at 1164.

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Ashcroft*, 563 U.S. at 742). See also *Knopf*, 884 F.3d at 944 (citing *Ashcroft*, 563 U.S. at 742). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Knopf*, 884 F.3d at 944 (citation omitted). "A prior case need not have identical facts. Rather, the pertinent question is whether it would have been clear to a reasonable officer that his or her conduct was unlawful in the situation." *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (citations and internal brackets and quotation marks omitted). See also *Perry v. Durborow*, 892 F.3d 1116, 1126 (10th Cir. 2018).

6

## II.    Undisputed Material Facts[9]

It is undisputed that on July 1, 2019, Wagoner County Deputy Sheriffs Orr and Phillips encountered Mr. Krueger, attempted to take him into custody, and a physical altercation ensued. Docket No. 295, at 12; Docket No. 330, at 7.  During the altercation, Deputy Orr radioed requesting assistance stating, "one fighting."  Docket No. 295, at 13; Docket No. 330, at 7.  After EMS services were requested, the EMT Defendants arrived on the scene to an unknown medical emergency and observed three adult males in a physical altercation in the middle of a busy highway.[10] *Id.*

Once the EMT Defendants were on the scene, one of the deputies immediately requested assistance in controlling and restraining Mr. Krueger.  *Id.*; Docket No. 330, at 8; Docket No. 327-26, at 15; Phillips Body Cam, at 22:00:34-36.[11]  At the time, Mr. Krueger was fighting back, kicking, and not complying with the deputies' orders.  Docket No. 330, at 8; Docket No. 327-26, at 12; Phillips Body Cam, at 22:00:25 – 22:01:14.  The EMT Defendants then assisted the officers by briefly holding Mr. Krueger's legs and one arm, which enabled the officers to handcuff him.  Docket No. 295, at 13, Docket No. 330, at 7 and 8.  Specifically, Smith reached down to get Mr. Krueger's right arm to help the deputies handcuff him, and Patterson held his legs.  Docket No. 330, at 8-9 and 11; Docket No. 327-26, at 15-16; Phillips Body Cam, at 22:00:35 – 22:01:50.  Patterson had his knees on Mr. Krueger's legs.  Docket No. 330, at 9;

---

[9] The court notes that "material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule."  Local Civil Rule 56.1(e).  This includes instances where a nonmovant indicates that a fact is disputed, but then argues a separate point without disputing the fact or providing any citation to evidence that controverts the fact.

[10] Plaintiffs "admit in part and deny in part [the EMT Defendants'] statements 1-5.  The hyperbole is denied."  Docket No. 330, at 7.  It is unclear which portion(s) Plaintiffs might consider "hyperbole," but the court left out the words "intense" and "violent."

[11] While still struggling with Mr. Krueger, a deputy says, "give us some f*cking help."

Docket No. 327-26, at 16.

It is further undisputed that the EMT Defendants' assistance in restraining Mr. Krueger lasted between 45 seconds and one minute.  Docket No. 295 at 14; Docket No. 330, at 7.  Smith and Patterson were wearing black gloves in the Phillips' Body Cam.  *Id*.  The black gloves first appear in the video at approximately 22:00:43.  The black-gloved hands that assisted in retrieving Mr. Krueger's hands backed away at approximately 22:01:14, and the person wearing the black gloves who assisted by holding Mr. Krueger's legs stood up and backed away at approximately 22:01:50.  It is further undisputed that after Mr. Krueger was handcuffed, the EMT Defendants remained in close proximity and provided ongoing surveillance of his clinical condition while the officers continued to maintain control and restrain him.  Docket No. 295 at 14; Docket No. 330, at 7.

The EMT Defendants at least momentarily looked at Mr. Krueger's head but provided no medical care at that time because he was in police custody and not compliant.  Docket No. 295 at 14; Docket No. 330, at 7 and 10.  Smith testified that he checked on Mr. Krueger's breathing and determined it was okay because he was grunting and moaning.  Docket No. 330, at 7 and 10; Docket No. 327-26, at 17.

After a hobble chain was placed on Mr. Krueger, Officer Blair noticed his breathing was altered and asked, "He's still breathing ain't he?"  Docket No. 295, at 14; Docket No. 330, at 7.  Officer McFarland then determined that Mr. Krueger had shallow breathing and called for the EMT Defendants to assist.  Docket No. 295, at 15; Docket No. 330, at 7; AXON Body Cam, at 4:06.  The EMT Defendants retrieved a cot and placed Mr. Krueger on it.  Docket No. 295, at 15; Docket No. 330, at 7; AXON Body Cam, at 4:53 – 5:06.  They placed him in the ambulance to transport him to the nearest hospital.  Docket No. 295, at 15; Docket No. 330, at 7.  A police

officer drove the ambulance so that both Smith and Patterson could provide Mr. Krueger with medical assistance.  *Id.*

The EMT Defendants did not remove Mr. Krueger's cuffs.  Docket No. 330, at 10.  Smith testified that he did not have a key and had no idea who had the keys to the cuffs.  Docket No. 327-26, at 20-21.  Smith testified that he did not ask the deputies to take the cuffs off because "[h]e had an immediate life threat that needed immediate attention.  And by uncuffing him that's wasting time, and his brain is dying."  *Id.* at 21.

Mr. Krueger was in the ambulance and connected to the monitor at approximately 22:05:29, whereupon vital signs were obtained and breathing assistance was provided – first by a bag valve mask and then by intubation.  Docket No. 295, at 15; Docket No. 330, at 7.  At 22:07:30, Patterson or Smith proactively requested air medical services be positioned at the local hospital should a higher level of care be required for Mr. Krueger.  *Id.*  When Mr. Krueger went into cardiac arrest, the EMT Defendants began CPR procedures and continued them until they arrived at the Wagoner Hospital emergency department at approximately 22:13:57.  Docket No. 295, at 15-16; Docket No. 330, at 7.   Mr. Krueger died on July 1, 2019 at Wagoner Community Hospital.  Docket No. 295, at 16; Docket No. 330, at 7.

### III.   Federal Claims

Plaintiffs brought their § 1983 claim for excessive force against all Defendants, including the EMT Defendants.  Plaintiffs also allege that the EMT Defendants failed to intervene to stop law enforcement officers from using excessive force against Mr. Krueger resulting in his death.  As the EMT Defendants have each asserted the defense of qualified immunity, the burden shifts to Plaintiffs to show: (1) that Smith's and Patterson's individual actions violated a federal

constitutional or statutory right, and (2) that the right was clearly established at the time of the unlawful conduct.

### A. Excessive Force

#### (i)    Constitutional Violation Prong

An excessive force claim can be brought under the Fourth, Fifth, Eighth, or Fourteenth Amendment, "and each carries with it a very different legal test." *Estate of Booker v. Gomez*, 745 F.3d 405, 418-19 (10th Cir. 2014). "When an excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Packard v. Budaj*, 86 F.4th 859, 865 (10th Cir. 2023) (citation and internal quotation marks omitted). "[A]n excessive force claim brought under the Fourth Amendment depends on the objective reasonableness of the officer's actions . . . ." *Booker*, 745 F.3d at 419.

The test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The court must consider (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether he was actively resisting arrest or attempting to evade arrest by flight. *Id*.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97. The court must weigh the "totality of the circumstances." *Packard*, 86 F.4th at 866 (citing

*Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).  Ultimately, the question is whether the officers' actions were "'*objectively reasonable*' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Id*. at 397 (emphasis added).

As stated above, a defendant's entitlement to qualified immunity turns on an *individual assessment* of each defendant's conduct and culpability.  Plaintiffs' allegations are, and the evidence shows, that after a deputy requested or arguably demanded their assistance, Smith briefly assisted the deputies in getting Mr. Krueger's right hand to his back so that they could handcuff him, and Patterson briefly assisted the deputies in holding Mr. Krueger's legs.  Phillips Body Cam, at 22:00:35 – 22:01:50.  During this time, Mr. Krueger was resisting and not compliant with the deputies' orders.  Phillips Body Cam, at 22:00:25 – 22:01:14.  Thereafter, Smith and Patterson stood back and did not intervene until called upon when Mr. Krueger's breathing was altered.

As to the first *Graham* factor, the EMT Defendants received Deputy Orr's radio request stating, "one fighting," and then arrived on the scene to find a struggle in the middle of a highway between the deputies and Mr. Krueger.  The second and third *Graham* factors weigh heavily in favor of Smith and Patterson.  Mr. Krueger stopped his car in the middle of a busy highway and was in a struggle with two deputies.  He thus posed an immediate threat to the safety of himself, the deputies, and others on the highway.  He was actively resisting arrest.  Under the totality of the circumstances, both Smith's and Patterson's actions in briefly assisting the deputies were objectively reasonable in the light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

      **(ii)**     **Clearly Established Prong**

Because "[u]se of excessive force is an area of the law in which the result depends very

11

much on the facts of each case, ... police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Choate v. Huff*, 773 Fed.Appx. 484, 489 (10th Cir. 2019) (citing *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018)).  Plaintiffs have not identified any cases holding that an EMT violates an individual's Fourth Amendment right to be free from excessive force by briefly assisting officers in cuffing that individual, especially when that individual is struggling with officers in the middle of a busy highway where he stopped his car.  As Plaintiffs have not satisfied their "burden of identifying cases that constitute clearly established law on these facts," *Id.* (citing *Quinn v. Young*, 780 F.3d 998, 1015 (10th Cir. 2015)), Smith and Patterson are entitled to qualified immunity on Plaintiffs' Fourth Amendment claims of excessive force.  The motion for summary judgment motion is granted as to the excessive force claims against Smith and Patterson.

### B.  Duty to Intervene

#### (i)    Constitutional Violation Prong

A "law enforcement official has an affirmative duty to intervene to prevent another law enforcement official's use of excessive force." *Mick v. Brewer*, 76 F.3d 1127, 1136 (1996).  To prevail on such a claim, Plaintiffs must show: "that 1) a government officer violated his constitutional rights, 2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and 3) the defendant had a realistic opportunity to intervene, but failed to do so." *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022).

As the court has determined in Orders entered simultaneously herewith, there are genuine issues of material fact as to whether certain deputies and/or officers used excessive force in violation of Mr. Krueger's constitutional rights.  To the extent such violations occurred, the EMT Defendants were on the scene to observe them.  The final question of whether the EMT

Defendants had a realistic opportunity to intervene is more difficult.[12]  An EMT or paramedic does not have authority to demand an officer to do or to stop doing anything, and certainly not with regard to an individual in the officer's custody.  Still, an EMT or paramedic on a scene like the one that is the subject of this litigation may be best positioned to inform officers that their actions could result in death.  In any event, the second prong of the qualified immunity analysis is definitive.

**Clearly Established Prong**

It is clearly established that law enforcement officers have a duty to intervene to prevent other officer's use of excessive force.  *Brewer*, 76 F.3d at 1136.  This defines clearly established law at a high level of generality, however, which the Supreme Court has warned against. *Mullenix*, 136 S.Ct. at 308.  Plaintiffs have not cited a Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts regarding the specific failure to intervene by an EMT or paramedic to stop law enforcement officers' use of excessive force.  Accordingly, the motion for summary judgment is granted as to the failure to intervene claims against Smith and Patterson.

**IV.   State Law Claims**

**A.  Medical Negligence and Wrongful Death**

The EMT Defendants correctly argue that pursuant to the GTCA, Plaintiffs' claim for medical negligence and wrongful death cannot be pursued against individual employees of a

---

[12] The EMT Defendants argue that they have no duty to intervene, as the duty is applicable only to law enforcement personnel.  The court is not so certain.  The EMT Defendants cite no case law stating that the duty applies *only* to law enforcement personnel.  In fact, in *Bledsoe*, the Tenth Circuit refers to a "different government actor" rather than a "law enforcement official" or an "officer."  *Id*.

political subdivision of the State of Oklahoma.

> Suits instituted pursuant to the provision of this act shall name as defendant the state or the political subdivision against which liability is sought to be established.  In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant with the exception that suits based on the conduct of resident physicians and interns shall be made against the individual consistent with the provisions of Title 12 of the Oklahoma Statutes.

51 OKLA. STAT. § 163(C).  The EMT Defendants have been sued in their individual capacities only.  Plaintiffs provide no response to this portion of the EMT Defendants' motion.  The EMT Defendants' motion is granted as to Plaintiffs' fourth claim for relief – medical negligence and wrongful death.

### B.  Assault and Battery

The EMT Defendants argue that the assault and battery claims against them were untimely filed.  The events giving rise to this action occurred on July 1, 2019.  The original Complaint was filed more than one year, but less than two years later on February 16, 2021.  As Defendants argue, the statute of limitations for an action for assault and battery in Oklahoma is one year.  12 OKLA. STAT. § 95(A)(4).

Plaintiffs argue that a two-year statute of limitations applies to an assault and battery claim brought in a § 1983 action.  While Plaintiffs are correct that a two-year statute of limitations period applies to § 1983 assault and battery claims, Plaintiffs framed their assault and battery claims as state law claims, not as § 1983 claims.  Plaintiffs cite to the Fourth Amendment within their first three claims for relief, but nowhere within their fourth, fifth, or sixth claims for relief do they cite to § 1983 or to any federal law.  Rather, Plaintiffs specifically allege that the acts of the individual defendants "*constitute the tort of assault and battery under Oklahoma state law and the common law*."  Docket No. 196, at 16 (emphasis added).  Plaintiffs allege that the individual defendants' "use of force, at times during the detention, arrest and handcuffing of Mr.

14

Krueger, were so excessive, malicious, willful and wanton, and a usurpation of the power lawfully vested in them, as to cause the death of Mr. Krueger, for which the Defendants can alternatively be found as *acting outside the scope of their employment and be individually liable.*" *Id.* (emphasis added).

The court notes that Plaintiffs also allege that they "timely filed a notice of tort claim under the Oklahoma Governmental Tort Claims Act with Wagoner County asserting the assault and battery of defendants Phillips and Orr, and this action is timely filed following the denial of that claim."[13] *Id.* at 17. Plaintiffs do not similarly allege that they filed a notice of tort claim with regard to the EMT Defendants. In any event, Plaintiffs' allegations of the intentional tort of assault and battery as filed against the individual defendants fall outside the scope of their employment[14] and thus outside the purview of the GTCA. *See Hall v. Oklahoma Dept. of Human Srvcs.*, No. 15-CV-0670-CVE-TLW, 2016 WL 2903266, at *9, n. 1 (N.D. Okla. May 18, 2016) (citations omitted).

Accordingly, Oklahoma's one-year statute of limitations applies to the assault and battery claims against the EMT Defendants. The EMT Defendants' motion is granted as to Plaintiffs' sixth claim for relief – assault and battery.

---

[13] Plaintiffs have not attached their notice of tort claim or any denial thereof to any of the five iterations of their Complaint or included such with their exhibits. While Plaintiffs allege in each Complaint that they have met all of the notice requirements of the GTCA, they did not include dates of their notice and/or any denial. Within a response to a motion to dismiss, however, Plaintiffs informed the court that their tort claim notice was submitted on June 24, 2020. Docket No. 116, at 10. Plaintiffs did not explicitly state that they did not receive a written denial, but they included that 90 days after their notice was September 22, 2020 and 180 days after that was March 21, 2021. *Id.*

[14] Moreover, to the extent Plaintiffs allege the EMT Defendants acted within the scope of their employment, pursuant to the GTCA, they would not be proper Defendants. 51 OKLA. STAT. §§ 153(C) and 163(C).

## V.      Conclusion

The EMT Defendants' motion for summary judgment [Docket No. 295] is hereby

GRANTED as to the federal claims of excessive force and failure to intervene and GRANTED

as to the state law claims of medical negligence and wrongful death and of assault and battery.

**IT IS SO ORDERED** this 26th day of March, 2024.

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**