# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. JOHN KRUEGER, individually and as Co-Administrator of the Estate of Jeffery Krueger, and<br>2. PAMELA KRUEGER, individually and as Co-Administrator of the Estate of Jeffery Krueger,<br>    *Plaintiffs*,<br><br>v.<br><br>1. SHERIFF CHRIS ELLIOT, in his official capacity as Sheriff of Wagoner County,<br>2. WAGONER EMERGENCY SERVICES, INC., a/k/a WAGONER EMS,<br>3. KALEB PHILLIPS, individually,<br>4. NICHOLAS ORR, individually,<br>5. JEFF PATTERSON, individually,<br>6. ALAN SMITH, individually,<br>7. DREW CRAIG, individually,<br>8. TYLER McFARLAND, individually,<br>9. CLARENCE COLLINS, individually,<br>10. COREY NEVITT, individually,<br>11. TRAVIS POTTS, individually,<br>12. BEN BLAIR, individually,<br>13. MATTHEW LOTT, individually, and<br>14. ELIZABETH CROCKETT, individually.<br>    *Defendants*. | Case No. CIV-21-044-RAW |

## ORDER[1]

This action arises from the death of Jeffrey Krueger on July 1, 2019. Plaintiffs allege that he was beaten, tased, cuffed, and ultimately suffered positional asphyxiation resulting in his death. Plaintiffs bring this action against:

- the Sheriff of Wagoner County, Chris Elliott, in his official capacity (hereinafter "Sheriff Elliott");

---

[1] When the court cites to the record, it uses the pagination and attachment numbers assigned by CM/ECF.

- Wagoner County Lieutenant Elizabeth Crockett, Deputy Sheriff Kaleb Phillips, Deputy Sheriff Nicholas Orr, and Deputy Sheriff Matthew Lott, each in their individual capacities (hereinafter collectively referred to as "County Defendants");[2]
- City of Wagoner Police Officers Ben Blair, Clarence Collins, Drew Craig, Tyler McFarland, Corey Nevitt, and Travis Potts, each in their individual capacities (hereinafter collectively referred to as "City Defendants"); and
- Emergency Medical Technicians Jeff Patterson and Alan Smith, each in their individual capacities (hereinafter collectively referred to as "EMT Defendants").[3]

Plaintiffs bring the following claims pursuant to 42 U.S.C. § 1983:

1. illegal arrest in violation of the Fourth Amendment against Sheriff Elliot, the County Defendants, and the City Defendants;
2. excessive force in violation of the Fourth Amendment against all Defendants;
3. inadequate training and supervision in violation of the Fourth Amendment against Sheriff Elliott;

Plaintiffs bring the following state law claims:

4. medical negligence and wrongful death against Wagoner EMS and the EMT Defendants;
5. negligence and wrongful death under the Oklahoma Governmental Tort Claims Act (hereinafter "GTCA") against Sheriff Elliott; and
6. assault and battery against all Defendants.

Now before the court is the motion for summary judgment filed by the City Defendants [Docket No. 297], Plaintiffs' response thereto [Docket No. 326], and the City Defendants' reply [Docket No. 347]. With leave of court, Plaintiffs also filed a "base brief of general law for responses in opposition" to all of the seven pending motions for summary judgment [Docket No. 321]. The City Defendants' exhibits are filed at Docket Nos. 297-1 through 297-28 and 347-1 through 347-2. Plaintiffs' exhibits are filed at Docket Nos. 327-1 through 327-29. Docket No. 326, at 6. Each party submitted the 17:56 minute video footage from Deputy Phillips' Body

---

[2] Plaintiffs also sued Major Dustin Dorr and Deputy Sheriff Colby North, but they have since been dismissed with prejudice by joint stipulation. Docket No. 316.
[3] Plaintiffs also sued Wagoner Emergency Services, Inc., a/k/a Wagoner EMS. As Wagoner EMS failed to plead or otherwise defend as directed, a Clerk's Entry of Default has been entered. Docket No. 64.

2

Cam (hereinafter referred to as "Phillips Body Cam"),[4] as well as the 5:39 minute video footage from another body cam (hereinafter referred to as "AXON Body Cam").[5]  Additionally, Plaintiffs submitted a 7:25 minute QT Video.  The court will address the other pending motions for summary judgment in separate orders.[6]

As stated above, Plaintiffs assert three claims against the City Defendants, including their 42 U.S.C. § 1983 claims for illegal arrest and for excessive force in violation of Mr. Krueger's Fourth Amendment rights and their state law claims for assault and battery.  The City Defendants argue that they are entitled to qualified immunity with regard to the § 1983 claims and that the assault and battery claim is barred by the statute of limitations.

### I.  Standard of Review

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment

---

[4] As the Phillips Body Cam video includes a timestamp, the court references it by the timestamp.
[5] The AXON Body Cam video is referenced differently by the parties, including being connected with multiple officers.  It is most commonly referenced as being connected with Bob Haley and labeled an "AXON Video."
[6] Also pending are motions by Sheriff Elliott [Docket No. 301]; by the County Defendants – Lieutenant Crockett [Docket No. 302], Deputy Phillips [Docket No. 306], Deputy Orr [Docket No. 307], and Deputy Lott [Docket No. 308]; and by the EMT Defendants [Docket No. 295].

as a matter of law.'" *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1257-58 (10th Cir. 2006) (citation omitted). Conversely, if "the record does not unequivocally point in one direction and allows for a genuine dispute concerning the facts, '[a]ll disputed facts must be resolved in favor of the party resisting summary judgment.'" *Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 757 (10th Cir. 2021).

In applying the summary judgment standard, the court views the evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* at 1258 (citation omitted). At this stage, however, a plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of the allegations. *Id.* "Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted). Additionally, "the general proposition that we accept plaintiff's version of the facts in the qualified-immunity summary-judgment setting 'is not true to the extent that there is *clear contrary* video evidence of the incident at issue.'" *Estate of Taylor*, 16 F.4th at 757 (citing *Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) and adding emphasis).

While at the summary judgment stage evidence need not be submitted "in a form that would be admissible at trial," "the content or substance of the evidence must be admissible." *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) and *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995)). For example, the court disregards "inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form." *Argo v. Id.* (emphasis in original). Furthermore, "affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are

4

not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). "Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

### *Qualified Immunity*

The affirmative defense of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant raises a qualified immunity defense in response to a motion to dismiss or a motion for summary judgment,[7] the burden shifts to the plaintiff and the court employs a two-part test. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012). A plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (citing *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)). "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Id.* (citation omitted). The court has discretion to decide which of the two prongs to address first in light of the circumstances of the case. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

In a case with multiple defendants, a defendant's entitlement to qualified immunity turns "on an *individual assessment* of each defendant's conduct and culpability." *Pahls v. Thomas*,

---

[7] "The legally relevant factors for a qualified immunity decision will be different at the summary judgment stage – no longer can the plaintiffs rest on facts as alleged in the pleadings." *Stonecipher v. Valles*, 759 F.3d 1134, 1148, n.9 (10th Cir. 2014).

5

718 F.3d 1210, 1233 (10th Cir. 2013) (emphasis added). "Plaintiffs must do more than show that their rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations." *Id*. at 1228 (citations omitted). Plaintiffs "must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility, that violated their clearly established rights." *Id*.

"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Knopf*, 774 F.3d at 944 (citation omitted). A law is not clearly established unless existing precedent has "placed the statutory or constitutional question beyond debate." *Id.* (citation omitted). This is an objective test. *Brown*, 662 F.3d at 1164.

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (citing *Ashcroft*, 563 U.S. at 742). See also *Knopf*, 884 F.3d at 944 (citing *Ashcroft*, 563 U.S. at 742). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Knopf*, 884 F.3d at 944 (citation omitted). "A prior case need not have identical facts. Rather, the pertinent question is whether it would have been clear to a reasonable officer that his or her conduct was unlawful in the situation." *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (citations and internal brackets and quotation marks omitted). See also *Perry v. Durborow*, 892 F.3d 1116, 1126 (10th Cir. 2018).

II.     **Undisputed Material Facts**[8]

It is undisputed that the events giving rise to this litigation took place on July 1, 2019. Docket No. 297, at 12; Docket No. 326, at 7. On that date, Wagoner County Deputies Orr and Phillips encountered Mr. Krueger, and an intense physical altercation occurred as they attempted to take him into custody. *Id*. During the altercation, one of the deputies radioed dispatch to request assistance stating, "one fighting." *Id*. Each of the City Defendants, Officers Craig, McFarland, Collins, Nevitt, Potts, and Blair were informed that County officers were in a fight with a combative subject and needed assistance. *Id*. Each of the City Defendants responded to the deputies' call for assistance. *Id*.

When they arrived, Mr. Krueger was still kicking and fighting, and Officers Craig and McFarland took over for Deputies Orr and Phillips. Docket No. 326, at 14-16; Docket No. 347, at 4-5; Docket No. 327-19, at 44-45; and Docket No. 327-17, at 19-20. Officer Craig testified that while he was directly across from Officer McFarland, he briefly placed his right knee on Mr. Krueger's right shoulder. Docket No. 297-5, at 9. As Plaintiffs argue, it is unclear from the video where Officer Craig was positioned. AXON Body Cam. It is undisputed that Officer McFarland placed his right shin and knee on Mr. Krueger's waistline and his left knee over Mr. Krueger's left shoulder, but the parties dispute whether, how, and how much weight he placed on Mr. Krueger. Docket No. 297, at 13; Docket No. 326, at 7-8. Plaintiffs argue that the video shows Officer McFarland putting his full weight on Mr. Krueger. Docket No. 326, at 7-8. While it appears that Officer McFarland did not put weight on his left knee for a few seconds at first,

---

[8] The court notes that "material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule." Local Civil Rule 56.1(e). This includes instances where a nonmovant indicates that a fact is disputed, but then argues a separate point without disputing the fact or providing any citation to evidence that controverts the fact.

7

the video supports Plaintiffs' argument that he ultimately did rest his weight on both knees. AXON Body Cam, at 2:00 – 4:00.

Officer Craig retrieved and assisted with placing leg shackles on Mr. Krueger. Docket No. 297, at 13; Docket No. 326, at 8. A hobble chain was placed on Mr. Krueger. *Id*. Shortly after the hobble chain was placed on Mr. Krueger, Officer Blair observed that Mr. Krueger's breathing was altered and asked, "He's still breathing ain't he?" Docket No. 297, at 14; Docket No. 326, at 8. Officer McFarland determined that Mr. Krueger was shallow breathing and then called for the EMS personnel who were already on the scene. *Id*.

It is undisputed that Officers Collins, Nevitt, and Blair did not assist with restraining or taking Mr. Krueger into custody. Docket No. 297, at 13; Docket No. 326, at 7. Officer Potts assisted by holding Mr. Krueger's right leg until leg shackles were applied. *Id*. Officer Nevitt testified that he witnessed Mr. Kreuger handcuffed and face down with officers on top of him. Docket No. 326, at 17; Docket No. 347, at 5; and Docket No. 327-20, at 19-20. Officer Blair testified that he observed Mr. Krueger pinned down by knees. Docket No. 326, at 18; Docket No. 347, at 5; and Docket No. 327-21, at 16 and 19. Officer Blair also testified that he had the keys to release Mr. Krueger, but did not because it was not his arrest, Mr. Krueger could become combative again, and EMS did not ask. Docket No. 326, at 18; Docket No. 347, at 5; and Docket No. 327-21, at 20.

Mr. Krueger was taken to the hospital and died on July 1, 2019 at Wagoner Community Hospital. Docket No. 297, at 14; Docket No. 326, at 8. The State Medical Examiner, Dr. Ross Miller, reported the cause of death as "cardiac dysrhythmias due to probable acute psychosis in

8

the setting of physical exertion and restraint." *Id.*[9]  Mr. Krueger was 6'3, weighed 156 pounds, and suffered from bipolar disorder.  Docket No. 326, at 9; Docket No. 347, at 4.  Officer Craig weighs approximately 235 pounds.  Docket No. 326, at 14-15; Docket No. 347, at 4-5.

Plaintiffs were aware of the events underlying this litigation on or about July 2, 2019 and filed their initial Complaint on February 16, 2021.  Docket No. 297, at 15; Docket No. 326, at 9.

### III.   Federal Claims

As stated above, Plaintiffs brought claims for relief against the City Defendants pursuant to § 1983 for illegal arrest and for excessive force in violation of Mr. Krueger's Fourth Amendment rights.  Additionally, while it is not abundantly clear in the Fourth Amended Complaint, Plaintiffs arguably also brought claims against the City Defendants for failure to intervene to stop other law enforcement officers from using excessive force against Mr. Krueger.

As the City Defendants have each asserted the defense of qualified immunity, the burden shifts to Plaintiffs to show: (1) that each of the City Defendant's *individual actions* violated a federal constitutional or statutory right, and (2) that the right was clearly established at the time of the unlawful conduct.  At the outset, the court grants the motions by Officers Collins and Potts, as Plaintiffs do not include any response to their motions.  Plaintiffs have failed to show that either Collins or Potts violated any constitutional or statutory right.

#### A. Illegal Arrest

##### (i)   Constitutional Violation Prong

A warrantless arrest violates the Fourth Amendment unless the arrest was supported by

---

[9] Plaintiffs admit this fact but deny that Dr. Miller is correct.  Plaintiffs' expert, Dr. Chundru, opined that the cause of death was positional asphyxia / traumatic asphyxia event.  Docket No. 326, at 8.

probable cause. *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (citation omitted). In determining whether probable cause existed, the court considers whether the "facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. (citation omitted).  This is an independent and objective test. *Id*. "Thus an officer's own subjective reason for the arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime." *Id*. (citations omitted).

Additionally, an officer's reliance on another officer's conclusions must be "objectively reasonable." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 882 (10th Cir. 2014).  An officer who acts "in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." Id. (citations and internal quotations omitted).

It is undisputed that Officers Nevitt and Blair did not assist with restraining or taking Mr. Krueger into custody.  Their motions, therefore, are granted as to this claim.

It is undisputed that when Officers Craig and McFarland arrived on the scene, Mr. Krueger was still kicking and fighting and resisting arrest.  While they did not know the reason(s) he was initially stopped, the facts and circumstances within their knowledge from their own observations of him kicking and fighting and resisting arrest were sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or was being committed.  Their motions, therefore, are also granted as to this claim.

### (ii)   Clearly Established Prong

As Plaintiffs failed to show that Officers Nevitt, Blair, Craig, or McFarland violated Mr. Krueger's Fourth Amendment right to be free of unlawful arrest, the court need not address this

prong. Nevertheless, the court notes that Plaintiffs have not cited cases showing that it would have been clear to a reasonable officer that any of the conduct above was in violation of Mr. Krueger's Fourth Amendment right to be free of unlawful arrest in the situation.

### B. Excessive Force

#### (i) Constitutional Violation Prong

An excessive force claim can be brought under the Fourth, Fifth, Eighth, or Fourteenth Amendment, "and each carries with it a very different legal test." *Estate of Booker*, 745 F.3d at 418-19. "When an excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Packard v. Budaj*, 86 F.4th 859, 865 (10th Cir. 2023) (citation and internal quotation marks omitted). "[A]n excessive force claim brought under the Fourth Amendment depends on the objective reasonableness of the officer's actions . . . ." *Estate of Booker*, 745 F.3d at 419.

The test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The court must consider (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether he was actively resisting arrest or attempting to evade arrest by flight. *Id*.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

The court must weigh the "totality of the circumstances." *Packard*, 86 F.4th at 866 (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). Ultimately, the question is whether the officers' actions were "'*objectively reasonable*' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (emphasis added).

It is undisputed that Officers Nevitt and Blair did not assist with restraining or taking Mr. Krueger into custody. The motion for summary judgment, therefore, is granted as to the excessive force claims against them.

Once on the scene, Officers Craig and McFarland became central to the restraint of Mr. Krueger. The *Graham* factors weigh in their favor. As to the first, they received Deputy Orr's radio request stating, "one fighting," and then they arrived on the scene to find Mr. Krueger kicking, fighting, and resisting arrest in the middle of the highway. As to the second factor, Mr. Krueger's resistance of officers in the middle of the highway posed an immediate threat to the safety of himself, the deputies and officers, as well as others on the highway. As to the third factor, Mr. Krueger was actively resisting arrest.

Nevertheless, under the totality of the circumstances, Plaintiffs have shown enough to create genuine issues of material fact as to whether Officer McFarland's and Officer Craig's use of force was objectively reasonable in the light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Mr. Krueger was face-down in a prone position and restrained by handcuffs and eventually ankle cuffs and a hog-tie-like restraint. Officer McFarland rested his knees on Mr. Krueger's back and left shoulder for over a minute during this time, and Officer Craig testified that he placed his knee on Mr. Krueger's right shoulder during this time. Plaintiffs have presented sufficient disputed evidence to meet their burden to show that Officer McFarland and Craig used excessive force and thus to survive the

summary judgment motion.

### (ii)   Clearly Established Prong

Because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, ... police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Choate v. Huff*, 773 Fed.Appx. 484, 489 (10th Cir. 2019) (citing *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018)).

Plaintiffs have cited existing precedent that squarely governs the specific facts at issue here. Docket No. 321. The court mentions just a few. In *Cruz*, the Tenth Circuit held that officers may not use hog-tie restraints when an individual's diminished capacity is apparent. *Cruz v. City of Laramie, Wyo.*, 239 F.3d 1183, 1188 (10th Cir. 2001). "The diminished capacity might result from severe intoxication, the influence of controlled substances, a discernible mental condition, or any other condition, apparent to the officers at the time, which would make the application of a hog-tie restraint likely to result in any significant risk to the individual's health or well-being." *Id*. The Circuit adds that "case law informs of tragic examples of positional asphyxia stemming from the hog-tie restraint, especially in instances involving individuals of diminished capacity." *Id*. Mr. Krueger certainly appears to have diminished capacity in the body cam videos. Plaintiffs have presented sufficient disputed evidence to meet their burden to show that officers used a hog-tie restraint on Mr. Krueger when his diminished capacity was apparent and thus to survive the summary judgment motion.

Additionally, Plaintiffs cited *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008), which involved an altercation between police and an individual on a busy highway. The Circuit held that if "the facts plaintiffs proffered are true and the jury draws the inferences most supportive of plaintiffs' position, then the law was clearly established that applying pressure to Mr. Weigel's

upper back, once he was handcuffed and his legs restrained, was unconstitutionally unreasonable due the significant risk of positional asphyxiation associated with such actions. We said this overtly, if not by strong and deducible inference, in *Cruz*." *Id*. at 1155. The Circuit continued: "Moreover, cases from other circuits have stated it is 'clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force.'" *Id*. (citations omitted).

In *Estate of Booker*, the Tenth Circuit reiterated: "In *Weigel*, we agreed with other circuits that it was 'clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force.'" *Estate of Booker*, 745 F.3d at 424. "Here, Deputy Robinette placed an estimated 142.5 pounds—more than Mr. Booker's overall weight—on Mr. Booker's back while he was handcuffed on his stomach. Because of Mr. Booker's prone, restrained, positions, the placement of weight exceeding Mr. Booker's total body weight could be construed as substantial or significant." *Id*. Plaintiffs have presented sufficient disputed evidence to meet their burden to show that Officers Craig and McFarland placed more than Mr. Krueger's body weight on his back while he was handcuffed and in a prone position on his stomach and thus to survive the summary judgment motion.

The motion for summary judgment, therefore, is denied as to the excessive force claims against Officers Craig and McFarland.

### C. Duty to Intervene to Prevent Excessive Force

#### (i) Constitutional Violation Prong

A "law enforcement official has an affirmative duty to intervene to prevent another law enforcement official's use of excessive force." *Mick v. Brewer*, 76 F.3d 1127, 1136 (1996). To

prevail on such a claim, Plaintiffs must show: "that 1) a government officer violated his constitutional rights, 2) a different government actor (the defendant) observed or had reasons to know about that constitutional violation, and 3) the defendant had a realistic opportunity to intervene, but failed to do so." *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022).

As stated above, Plaintiffs have presented sufficient disputed evidence to meet their burden to show that Officers McFarland and Craig used excessive force on Mr. Krueger. Moreover, they were each there to observe the other. It is also undisputed that Officers Nevitt and Blair observed Mr. Krueger pinned down under officers' knees. Thus, to the extent there was a constitutional violation, Plaintiffs have presented sufficient disputed evidence to meet their burden to show that each officer observed it happening, and each officer had a realistic opportunity to intervene, but failed to do so.

      **(ii)    Clearly Established Prong**

It is clearly established that law enforcement officers have a duty to intervene to prevent other officer's use of excessive force. *Brewer*, 76 F.3d at 1136. In *Weigel*, a similar case cited by Plaintiffs and included above, the Tenth Circuit noted that as it recently recognized, it is clearly established:

> that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that excessive force is being used . . . . In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

<u>Weigel v. Broad</u>, 544 F.3d 1143, 1153, n.4 (10th Cir. 2008) (citing Vondrak v. City of Las Cruces, 535 F.3d 1198, 1210 (10th Cir. 2008)).

The motion for summary judgment is denied as to the failure to intervene claims against Officers Craig, McFarland, Nevitt, and Blair.

IV.   **State Law Claims**

   A.  **Assault and Battery**

The City Defendants argue that the assault and battery claims against them were untimely filed. The events giving rise to this action occurred on July 1, 2019. The original Complaint was filed more than one year, but less than two years later on February 16, 2021. As Defendants argue, the statute of limitations for an action for assault and battery in Oklahoma is one year. 12 OKLA. STAT. § 95(A)(4).

Plaintiffs argue that a two-year statute of limitations applies to an assault and battery claim brought in a § 1983 action. While Plaintiffs are correct that a two-year statute of limitations period applies to § 1983 assault and battery claims, Plaintiffs framed their assault and battery claims as state law claims, not as § 1983 claims. Plaintiffs cite to the Fourth Amendment within their first three claims for relief, but nowhere within their fourth, fifth or sixth claims for relief do they cite to § 1983 or to any federal law. Rather, Plaintiffs specifically allege that the acts of the individual defendants "*constitute the tort of assault and battery under Oklahoma state law and the common law*." Docket No. 196, at 16 (emphasis added). Plaintiffs allege that the individual defendants' "use of force, at times during the detention, arrest and handcuffing of Mr. Krueger, were so excessive, malicious, willful and wanton, and a usurpation of the power lawfully vested in them, as to cause the death of Mr. Krueger, for which the Defendants can alternatively be found as *acting outside the scope of their employment and be individually liable*." *Id*. (emphasis added).

16

The court notes that Plaintiffs also allege that they "timely filed a notice of tort claim under the Oklahoma Governmental Tort Claims Act with Wagoner County asserting the assault and battery of defendants Phillips and Orr, and this action is timely filed following the denial of that claim."[10] *Id*. at 17.  Plaintiffs do not similarly allege that they filed a notice of tort claim with regard to the City Defendants.  In any event, Plaintiffs' allegations of the intentional tort of assault and battery as filed against the individual defendants fall outside the scope of their employment[11] and thus outside the purview of the GTCA.  *See Hall v. Oklahoma Dept. of Human Srvcs*., No. 15-CV-0670-CVE-TLW, 2016 WL 2903266, at *9, n. 1 (N.D. Okla. May 18, 2016) (citations omitted).

Accordingly, Oklahoma's one-year statute of limitations applies to the assault and battery claims against the City Defendants.  The City Defendants' motion is granted as to Plaintiffs' sixth claim for relief – assault and battery.

### V.     Summary

The court rules as follows on the City Defendants' motion for summary judgment [Docket No. 297]:

- As to Officers Collins and Potts, the motion is GRANTED as to all claims.

---

[10] Plaintiffs have not attached their notice of tort claim or any denial thereof to any of the five iterations of their Complaint or included such with their exhibits.  While Plaintiffs allege in each Complaint that they have met all of the notice requirements of the GTCA, they did not include dates of their notice and/or any denial.  Within a response to a motion to dismiss, however, Plaintiffs informed the court that their tort claim notice was submitted on June 24, 2020.  Docket No. 116, at 10.  Plaintiffs did not explicitly state that they did not receive a written denial, but they included that 90 days after their notice was September 22, 2020 and 180 days after that was March 21, 2021.  *Id*.

[11] Moreover, to the extent Plaintiffs allege the City Defendants acted within the scope of their employment, pursuant to the GTCA, they would not be proper Defendants.  51 OKLA. STAT. §§ 153(C) and 163(C).

- As to Officer Nevitt and Blair, the motion is GRANTED as to the § 1983 illegal arrest and excessive force claims, as well as the state law assault and battery claims. The motion is DENIED as to the § 1983 claims for failure to intervene to prevent excessive force.

- As to Officers Craig and McFarland, the motion is GRANTED as to the § 1983 claims for illegal arrest and the state law assault and battery claims. The motion is DENIED as to the § 1983 claims for excessive force and failure to intervene to prevent excessive force.

**IT IS SO ORDERED** this 26th day of March, 2024.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**